IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LEONETTI'S FROZEN FOODS, INC.      :
                                   :          CIVIL ACTION
         v.                        :          No. 11-6736
                                   :
AMERICAN KITCHEN DELIGHTS, INC.    :
                                   :

O'NEILL, J.                                   April 4, 2012


**MEMORANDUM**

Now before me is the motion of defendant American Kitchen Delights, Inc. to dismiss the amended complaint of plaintiff Leonetti's Frozen Foods, Inc. for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). For the reasons that follow, I will deny American Kitchen's motion.

**BACKGROUND**

Leonetti's[1] manufactures and sells stromboli to food service and retail customers throughout the mid-Atlantic region. Am. Compl. ¶¶ 6-7. From January 1, 2000 to October 2007, Leonetti's "manufactured stromboli products using its proprietary recipes and formulas for Maglio Fresh Food d/b/a Maglio Sausage Company." Id. ¶ 12.

American Kitchen[2] manufactures ready to eat meals, salads and sandwiches. Id. ¶ 2. Its products are marketed as private label or store brand versions of national brand products. Id.

_____

[1]       Leonetti's principal place of business is in Philadelphia, Pennsylvania.

[2]       American Kitchen's principal place of business is in Harvey, Illinois.

¶¶ 11, 13.  As of October or November 2007, American Kitchen "began manufacturing all of Maglio's stromboli products, both retail and food service, pursuant to a private label manufacturing agreement."  Id. ¶ 13.  After manufacturing its stromboli products, American Kitchen packages and ships them to Maglio's warehouse in Philadelphia.  Id. ¶ 14.  Maglio distributes American Kitchen's stromboli products "to food service and retail customers throughout the mid-Atlantic region."  Id. ¶ 15.  Leonetti's alleges that when compared to the stromboli manufactured for Maglio by Leonetti's the stromboli products developed by American Kitchen "have different ingredients and nutrition facts," "are folded differently" and "are "substantially different in appearance," and "are made using less meat and less expensive ingredients."  Id. ¶¶ 17-19.  American Kitchen "never advised any customers of the changes that were made to the stromboli products."  Id. ¶ 38.

Leonetti's contends that in or around June, 2010, it discovered that American Kitchen was distributing American Kitchen manufactured stromboli using the same packaging that Leonetti's had used to distribute Leonetti's stromboli under the Maglio brand.  American Kitchen "never advised any customers . . . that the stromboli it was putting inside the boxes did not match the label."  Id. ¶ 38.  Leonetti's asserts that it "never gave Maglio or [American Kitchen] permission to use the images of Leonetti's hand-made stromboli to market and sell the new stromboli products developed by American Kitchen."  Id. ¶ 21.  Leonetti's also contends that American Kitchen "did not file any applications with the USDA to obtain temporary approval to use the boxes Leonetti's previously used to distribute stromboli under the Maglio Brand."  Id. ¶ 26.  American Kitchen's "conduct of using pictures, ingredients, and nutrition facts of stromboli previously manufactured by Leonetti's" on boxes of American Kitchen's stromboli is alleged to

have "prevented customers from learning that the stromboli had changed" and allowed American Kitchen to "continue[ ] to benefit from the good-will created as a result of Leonetti's having previously manufactured a premium, hand-made stromboli for Maglio."  Id. ¶ 35-36.  Leonetti's alleges that American Kitchen's "conduct had the effect of misleading and causing confusion among retail and food service customers."  Id. ¶ 37.

Leonetti's alleges that "in late 2007 or early 2008, [American Kitchen] learned that some food service customers were complaining about the new stromboli products."  Id. ¶ 39.  Sysco Foods, a food service customer, requested stromboli samples from American Kitchen and from Leonetti's.  Id. ¶ 40-41.  Leonetti's asserts that American Kitchen obtained samples of Leonetti's stromboli to use as a model for the stromboli that American Kitchen provided to Sysco.  The samples manufactured for Sysco by American Kitchen allegedly "contained more ingredients, were made by hand and were folded differently than the stromboli [American Kitchen] actually manufactures and intended to manufacture for Sysco."  Id. ¶ 45.  Leonetti's contends that American Kitchen "had no intention of making these samples in production and [they] were only submitted for purposes of maintaining the [Sysco] account."  Id. ¶ 44.  Leonetti's asserts that "[b]ut for [American Kitchen's] deception, Leonetti's would have obtained the Sysco account."  Id. ¶ 47.  Leonetti's further contends, upon information and belief, that American Kitchen "submitted phony samples to other food service customers including US Foods and Aramark in an effort to either maintain or obtain business."  Id. ¶ 48.

On or about November 1, 2010, the USDA began an investigation of American Kitchen to determine whether American Kitchen used accurate and properly approved labels for the stromboli it manufactured for Maglio.  Id. ¶ 49.  Upon concluding its investigation on or about

February 2, 2011, the USDA found that American Kitchen "did not have proper approval for any of the labels, both food service and retail, that it had been using to manufacture Maglio Brand stromboli products since 2007." Id. ¶ 50.  Finding twelve separate labeling violations, "[t]he USDA rescinded approval for both the retail and food service labels and refused to grant temporary label approval to [American Kitchen], finding that the continued use of these label[s] without modification would be misleading and could result in severe economic advantage in the market place." Id. ¶¶ 51, 52.  Leonetti's alleges that American Kitchen "made at least three (3) shipments of retail stromboli using rescinded labels after learning of the February 2, 2011 Directive from USDA." Id. ¶ 54.  Leonetti's further contends that American Kitchen "never stopped manufacturing and shipping food service stromboli to Maglio using the rescinded labels." Id. ¶ 55.

In early October, 2011, after having obtained new label approval from the USDA in early September 2011, American Kitchen began using new boxes to distribute frozen stromboli to customers. Id. ¶¶ 56, 59.  Leonetti's contends that "[t]he new boxes contain representations and pictures that are substantially different than the products inside the boxes." Id. ¶ 60.  Leonetti's alleges that American Kitchen "submitted 'special stromboli samples' to a photographer" for photographs for the "new 16oz and 20oz stromboli boxes" and that the "'special stromboli' contained additional ingredients and were folded differently than the stromboli" that American Kitchen actually manufactures, packages, and ships to Maglio. Id. ¶¶ 57-58.  Leonetti's asserts that it "continues to be harmed as a direct result of the false and deceptive packaging used by [American Kitchen] to manufacture and distribute its products to customers." Id. ¶ 61.  Leonetti's contends that both the old and new packaging used by American Kitchen "have the

purpose and effect of confusing customers, and increasing sales, to the detriment of Leonetti's."
Id. ¶ 62.

As a result of American Kitchen's actions, Leonetti's asserts that it has sustained
damages, including but not limited to, lost sales and business opportunities, as well as damage to
its reputation, good-will, and brand quality." Id. ¶¶ 76, 87.

## DISCUSSION

### I.    Motion to Dismiss Pursuant to Rule 12(b)(1)

American Kitchen moves to dismiss Leonetti's amended complaint pursuant to Federal
Rule of Civil Procedure 12(b)(1), which authorizes dismissal of a complaint for lack of subject
matter jurisdiction.  "A motion under Rule 12(b)(1) may be treated as either a facial attack on the
complaint or a factual challenge to the court's subject matter jurisdiction."  Gould Elecs., Inc. v.
United States, 220 F.3d 169, 176 (3d Cir. 2000).  Because American Kitchen's motion presents a
facial attack on plaintiff's amended complaint, I will assume that the allegations of the amended
complaint are true and will consider whether "the pleadings fail to present an action or claim
within the court's jurisdiction."  Hall v. Easton Area Sch. Dist., No. 10-7603, 2012 WL 526287,
at *2 (E.D. Pa. Feb. 17, 2012), citing Mortenson v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884,
891 (3d Cir. 1977).  Plaintiff bears the burden of persuasion when subject matter jurisdiction is
challenged.  Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).

American Kitchen asserts that Leonetti's Frozen Foods, Inc. does not exist and argues
that the amended complaint must be dismissed for lack of subject matter jurisdiction under Rule
12(b)(1) because it fails to assert facts to show that Leonetti's Frozen Foods, Inc. is the real party
in interest in this case with standing to bring this action against American Kitchen.  A lawsuit

"must be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a)(1).  In

support of its argument, American Kitchen contends that it was unable to locate "Leonetti's

Frozen Foods, Inc." or "Leonetti's Frozen Foods" when it conducted a search on the

Pennsylvania Corporations Bureau website.

    Responding to American Kitchen's argument, Leonetti's contends that Leonetti Food

Distributors, Inc. is doing business as Leonetti's Frozen Foods, Inc.  Leonetti Food Distributors,

Inc. is a registered Pennsylvania corporation with its principal place of business at the same

address as Leonetti Frozen Food, Inc.  Under Pennsylvania law, a corporation may register to

conduct business under a fictitious name, as well as maintain suit under that fictitious name.  See

54 Pa. Cons. Stat. § 331.  Although it had not done so prior to filing this action, Leonetti Food

Distributors, Inc. has now applied to register Leonetti's Frozen Foods as a fictitious name with

the Pennsylvania Secretary of State.  Dkt. No. 12, Ex. D.[3]

    In considering whether the real party in interest rule should bar Leonetti's claims against

American Kitchen, it is important to note that Rule 17(a)(3) further provides that

> [t]he court may not dismiss an action for failure to prosecute in the
> name of the real party in interest until, after an objection, a
> reasonable time has been allowed for the real party in interest to
> ratify, join, or be substituted into the action.  After ratification,

---

[3]    The Fictitious Names Act provides that an entity which has failed to register its
fictitious name may not maintain an action in a tribunal in the Commonwealth of Pennsylvania.
54 Pa.C.S.A. § 331.  Before an unregistered entity operating under a fictitious name can institute
suit, it must register the name and pay a civil fine of five hundred dollars.  Id.  A plaintiff's
registration of a fictitious name shortly after the filing of a complaint may constitute "substantial
compliance" with the statute where the failure to register did not result in prejudice to the
defendant.  Johnson v. Laureland Builders, 11 Pa. D. & C. 4th 271, 272 (Pa. Ct. Com. Pl. 1991);
see also Smith Atwell v. Billigen Home Improvements, Inc., 34 Pa. D. & C. 3d 578, 581 (Pa. Ct.
Com. Pl. 1984) (declining to dismiss action filed by a plaintiff who had not registered its
fictitious name "until after plaintiff has been given the opportunity to comply with the act").

-6-

> joinder, or substitution, the action proceeds as if it had been
> originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3).  In my opinion, the instant case is a proper one in which to allow

substitution under Rule 17(a)(3).  Leonetti's has, by its timely response to American Kitchen's

motion to dismiss, asked the Court to allow for the substitution of Leonetti Food Distributors,

Inc. in this action.  Dkt. No. 12 at 16.  Under the circumstances, there is no prejudice to

American Kitchen if Leonetti Food Distributors, Inc. is substituted as the plaintiff.  As the

Supreme Court has stated,

> [i]t is too late in the day and entirely contrary to the spirit of the
> Federal Rules of Civil Procedure for decisions on the merits to be
> avoided on the basis of . . . mere technicalities.  The Federal Rules
> reject the approach that pleading is a game of skill in which one
> misstep by counsel may be decisive to the outcome and accept the
> principle that the purpose of pleading is to facilitate a proper
> decision on the merits.

Foman v. Davis, 371 U.S. 178, 181-82 (1962) (internal citations and quotation marks omitted);

see also Hygienics Direct Co. v. Medline Indus., Inc., No. 98-03883, 2000 WL 1468511, at *3

(E.D. Pa. Sept. 28, 2000) ("It would frustrate the intent of the federal courts to do substantial

justice if an apparent technical violation of a statute with such modest purpose . . . were held to

obstruct consideration of evidence on a relevant jurisdictional issue.").  Accordingly, I will allow

this action to proceed as if it had been originally commenced by Leonetti Food Distributors, Inc.

## II.     Motion to Dismiss Pursuant to Rule 12(b)(6)

American Kitchen also moves to dismiss Leonetti's amended complaint pursuant to Rule

12(b)(6), which permits a Court to dismiss all or part of an action for "failure to state a claim

upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Typically, "a complaint attacked by

a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's

obligation to state the grounds of entitlement to relief "requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to

relief above the speculative level on the assumption that all of the allegations in the complaint are

true (even if doubtful in fact)."  Id. (citations omitted).  The complaint must state "'enough facts

to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."

Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 321 (3d Cir. 2008), quoting

Twombly, 550 U.S. at 556.  The Court of Appeals has made clear that after Ashcroft v. Iqbal,

129 S. Ct. 1937, 1955 (2009), "conclusory or 'bare-bones' allegations will no longer survive a

motion to dismiss:  'threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice.'  To prevent dismissal, all civil complaints must now set

out 'sufficient factual matter' to show that the claim is facially plausible."  Fowler v. UPMC

Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 129 S. Ct. at 1949.  When reviewing

motions to dismiss in light of Twombly and Iqbal, "[f]irst, the factual and legal elements of a

claim should be separated.  The District Court must accept all of the complaint's well-pleaded

facts as true, but may disregard any legal conclusions.  Second, a District Court must then

determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a

'plausible claim for relief.'"  Id. at 210-11, quoting Iqbal, 129 S. Ct. at 1950.  "[A] complaint

must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an

entitlement with its facts."  Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d

Cir. 2008).  "Where the well-pleaded facts do not permit the court to infer more than the mere

-8-

possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949.

1.    **False Advertising Under the Lanham Act**[4]

In its motion to dismiss, American Kitchen contends that Leonetti's amended complaint does not sufficiently allege an actionable false or misleading representation of fact under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Section 43(a) provides, in relevant part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> . . .
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).  Congress enacted section 43(a) of the Lanham Act "to stop the kind of unfair competition that consists of lying about goods or services." Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 941 (3d Cir. 1993), quoting U-Haul Int'l, Inc. v. Jartran, Inc., 681 F.2d 1159, 1162 (9th Cir. 1982).  For the following reasons, I find that the amended complaint sufficiently alleges a claim under section 43(a).

---

[4]    Although American Kitchen makes numerous arguments in its motion to dismiss directed at a trade dress claim, Leonetti's notes in its response to the motion that "the Amended Complaint never pleads or suggests that its Lanham Act Claim under 1125a is predicated on a theory of trademark or trade dress infringement."  Dkt. No. 12 at 17.  Accordingly, I need not address the arguments that American Kitchen has raised with respect to such a claim.

### a.    False or Misleading Representations

District courts in the Third Circuit have applied an intermediate pleading standard[5] to the "false or misleading" representations element of a Lanham Act claim for false advertising, requiring more particularity than traditional notice pleading under Rule 8, but something less than the specificity required for pleading fraud under Rule 9.  See EVCO Tech. & Dev. Co., LLC v. Buck Knives, Inc., No. 05-6198, 2006 WL 2773421, at *15 (E.D. Pa. Sept. 22, 2006); Max Daetwyler Corp. v. Input Graphics, Inc., 608 F. Supp. 1549, 1556 (E.D. Pa. 1985); Graco, Inc. v. PMC Global, Inc., No. 08-1304, 2009 WL 904010, at *24-25 (D.N.J. Mar. 31, 2009).  The Court of Appeals has not addressed the pleading standard applicable to Lanham Act false advertising claims.  "In litigation in which one party is charged with making false statements, it is important that the party charged be provided with sufficiently detailed allegations regarding the nature of the alleged falsehoods to allow him to make a proper defense."  Max Daetwyler, 608 F. Supp. at 1556.  Leonetti's allegations that American Kitchen's product packaging included false information about the products inside are sufficient to meet this intermediate standard.

To prove a false advertising claim under the Lanham Act, a plaintiff can prove either that an advertisement is literally false or that it is literally true but misleading to the consumer. Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharm., Inc., 290 F.3d 578, 586 (3d Cir. 2002).

If an advertisement is literally false, the plaintiff does not have to

---

[5]    In its opposition to the motion to dismiss, Leonetti's asserts that "not all courts within this Circuit have applied an 'intermediate' standard."  Dkt. No. 12 at 13.  In support of this contention, however, Leonetti's brief cites to a case from the Southern District of New York and does not identify any decision from a district court in the Third Circuit that declines to apply the intermediate pleading standard.

> prove actual consumer deception.  If, on the other hand, an
> advertisement is literally true but misleading, the plaintiff must
> prove actual deception by a preponderance of the evidence.  If a
> claim is literally true, a plaintiff cannot obtain relief by arguing
> how consumers could react; it must show how consumers actually
> do react.

Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 171 (3d Cir. 2001) (citations and

internal quotation omitted).  Leonetti's amended complaint alleges facts that, if true, support a

finding that the boxes that American Kitchen used to package its manufactured stromboli

products were "literally false."  The photographs on the boxes and the packages' nutritional and

ingredient labels did not correspond to the stromboli that American Kitchen was putting in the

boxes.  It is of no moment that Maglio's name and not American Kitchen's is on the packaging

that is alleged to have included false information.  Section 43(a)(1)(B) clearly prohibits the use of

a "false or misleading description of fact, or false or misleading representation of fact, which . . .

misrepresents the nature, characteristics, [or] qualities . . . of . . . another person's goods."  15

U.S.C.A. § 1125(a)(1)(B); see also Hot Wax, Inc. v. Warsaw Chem. Co., Inc., 45 F. Supp. 2d

635, 648 (N.D. Ill. 1999) (holding defendant manufacturer may be liable under the Lanham Act

for false advertising where misrepresentation misled both distributors and consumers).

Further, "[i]n cases involving a defendant's alleged [use] of photographs of a plaintiff's

product in defendant's advertising, it has been held that a cause of action under section 43(a) is

made out by proof that defendant (1) falsely represented that the photograph of his competitor's

product was his own and (2) that the pictured product is not identical to the one the defendant is

prepared to deliver."  Supelco, Inc. v. Alltech Assocs., Inc., No. 86-2484, 1986 WL 9282, at *4

(E.D. Pa. Aug. 27, 1986), citing 14 U.S.C. § 1125(a); L'Aiglon Apparel, Inc. v. Lana Lobell,

-11-

Inc., 214 F.2d 649, 650-51 (3d Cir. 1954).  Leonetti's amended complaint clearly alleges that the

product photographed and described on the stromboli packaging used by American Kitchen was

not identical to the stromboli that American Kitchen intended to deliver to its customers.

Instead, it was identical to the stromboli manufactured by Leonetti's.  Despite American

Kitchen's contention that the stromboli photographs "are generic," Dkt. No. 10-1 at 15, the

photographs on the box were clearly intended to represent the stromboli contained inside the

boxes – the stromboli manufactured by American Kitchen – when, if Leonetti's allegations are

true, they did not.

Considering the plaintiff's motion for an injunction in a case alleging that the defendants'

brochures and catalogs contained photographs of the plaintiff's vacuum manifold, a device that

was "similar but not identical to the device defendants actually marketed," the Court in Supelco

found that the plaintiff was likely to prevail on the merits of its claim under section 43(a) of the

Lanham Act.  Supelco, Inc., 1986 WL 9282, at *2, 5.  The defendant "represent[ed] falsely that

their competitor's product was their own."  Id. at *5.  Here, American Kitchen is alleged to have

represented falsely that Leonetti's stromboli was the product that American Kitchen supplied to

Maglio.

Similarly, in L'Aiglon Apparel, 214 F.2d at 650-51, the plaintiff's complaint alleged that

the defendant had used a picture of the plaintiff's dress to advertise the defendant's "dress which

in fact was much inferior to plaintiff's in quality and notably different in appearance" and that the

"misrepresentation caused some trade to be diverted from plaintiff to defendant and caused other

trade to be lost by plaintiff as a result of the mistaken impression conveyed to those familiar with

the advertising of both parties that plaintiff was offering for $17.95 a dress worth only $6.95."

The Court of Appeals reversed the District Court's dismissal of the plaintiff's claim under section 43(a) of the Lanham Act, finding that "this complaint states about as plain a use of a false representation in the description of goods sold in commerce as could be imagined." Id. at 650.[6] Leonetti's amended complaint makes similar allegations that the false information on American Kitchen's stromboli packaging caused stromboli sales to be diverted from Leonetti's to American Kitchen even though American Kitchen's stromboli were of inferior quality.

Finally, in Capp, Inc. v. Dickson Unigage, Inc., No. 03-5046, 2004 WL 1849893, at *3 (E.D. Pa. Aug. 18, 2004), Dickson asserted a proposed counterclaim against Capp under section 43(a) of the Lanham Act where "Capp's bid submission to the State of Washington included a picture of [a temperature chart recorder manufactured by] Dickson despite the fact that Capp did not intend to supply Washington with Dickson recorders." Capp had initially supplied its customers with Dickson recorders, but ceased to do business with Dickson and instead began marketing another recorder that "was designed to look identical to" Dickson's recorder. Id. at *1. Capp argued that Dickson's proposed Lanham Act counterclaim failed to state a cause of action "because it d[id] not assert that Capp's allegedly false advertisements were material to, or had any impact upon, the State of Washington's purchasing decisions; because Dickson did not allege confusion on the part of Washington State and because Dickson suffered no damages as a result of such confusion as it was ultimately awarded the Washington contract." Id. at *3. Finding that Dickson's proposed counterclaim would survive a 12(b)(6) motion to dismiss, the

---

[6]     In a footnote in its reply memorandum, American Kitchen contends that in L'Aiglon Apparel the Court of Appeals "declined to find a violation of the Lanham Act." Dkt. No. 13-1 at 22 n.23. While the Court of Appeals did not affirmatively hold that the defendant's conduct had violated the Lanham Act, it did hold that the plaintiff's allegations were sufficient to withstand the defendant's motion to dismiss.

Court held that there was "no need to allege that the State of Washington and other potential buyers were confused" because the counterclaim "allege[d] that Capp's advertisement was false." Id. at *3.  Further, Dickson's allegations made clear that it "believe[d] Capp's misrepresentation to have been material to the purchasing decisions made by potential customers" and that "the thrust of Dickson's counterclaims [was] that Capp [was] unfairly benefitting from the longstanding good reputation of Dickson Recorders by suggesting to potential buyers that Capp [would] be providing a Dickson Product."  Id.  Leonetti's amended complaint likewise alleges that American Kitchen's stromboli packaging is false and that American Kitchen "benefitt[ed] from the good-will created as a result of Leonetti's having previously manufactured a premium, hand made stromboli for Maglio for almost Eight (8) years."  Am. Compl. at 36.

Guided by the decisions in Supelco, L'Aiglon Apparel and Capp, I conclude that Leonetti's allegations that American Kitchen misrepresented the photographs, ingredients and nutrition facts of its stromboli so that customers would believe the stromboli previously supplied to Maglio by Leonetti's had not changed when American Kitchen took Leonetti's place as Maglio's stromboli supplier are sufficient to withstand American Kitchen's motion to dismiss. See also Truck Equip. Serv. Co. v. Fruehauf Corp., 536 F.2d 1210, 1215-16 (8th Cir. 1976) (rejecting the defendant's contention that the use of photographs of the plaintiff's product in the defendant's sales literature is not a false representation prohibited by section 43(a) of the Lanham Act); Am. Optical Co. v. Rayex Corp., 266 F. Supp 342, 345 (S.D.N.Y. 1966) (finding that "defendants have committed a wrong by using a photograph of plaintiffs' product to sell their own inferior quality product and indeed filling orders with models different from that pictured in the catalogue"); Zandelin v. Maxwell Bentley Mfg. Co., 197 F. Supp. 608, 611 (S.D.N.Y. 1961)

-14-

(citations omitted) (holding that section 43(a) of the Lanham Act "applies where a defendant advertises its inferior and much cheaper product by featuring a photographic reproduction of plaintiffs' product, thus creating the impression that his product is precisely the same as plaintiffs' and causes trade to be diverted from plaintiff to himself and other trade to be lost").

### b.    Commercial Advertising or Promotion

I also conclude that Leonetti's amended complaint sufficiently alleges that the photographs and nutritional information on the stromboli boxes constitute "commercial advertising or promotion" within the meaning of the Lanham Act.  Commercial advertising is defined as "(1) commercial speech; (2) by a defendant in commercial competition[7] with the plaintiff; (3) for the purposes of influencing consumers to buy the defendant's goods or services; and (4) that is sufficiently disseminated to the relevant purchasing public to constitute advertising or promotion within the industry."  Caldon, Inc. v. Advanced Measurement & Analysis Grp., Inc., 515 F. Supp. 2d 565, 578 (E.D. Pa. 2007); see also Pitney Bowes, Inc. v. ITS Mailing Sys. Inc., No. 09-5024, 2010 WL 1005146, at *4 (E.D. Pa. Mar. 17, 2010), quoting Synygy, Inc. v. Scott–Levin, 51 F. Supp. 2d 570, 576 (E.D. Pa. 1999) (same).  "[A]n advertising claim is not shielded from the Lanham Act merely by appearing only on a product's label."  Sandoz Pharm. Corp. v. Richardson-Vicks, Inc., 902 F.2d 222, 231 (3d Cir. 1990); see also PPX Enters., Inc. v. Audio Fidelity Enters., 818 F.2d 266, 272 (2d Cir. 1987) (recognizing that a record's album

---

[7]      American Kitchen argues that Leonetti's claims should be dismissed because, as "a non-existent entity," it cannot be in commercial competition with American Kitchen.  For the reasons set forth in Section I of this Opinion, this argument is a nonstarter.  Further, despite American Kitchen's arguments to the contrary, I find that at this stage of the case Leonetti's amended complaint sufficiently alleges that Leonetti's and American Kitchen are market competitors through its allegations that each company manufactures stromboli products for sale to food service and retail customers, whether under their own label or under a private label.

cover is a means of advertising); <u>Warren Corp. v. Goldwert Textile Sales, Inc.</u>, 581 F. Supp. 897, 900 (S.D.N.Y. 1984) ("Advertising is not limited to newspaper, television or radio announcements; any notice addressed to the public serves the same purpose.").  "The form of the statements is not dispositive, and courts find statements to be commercial speech even where promulgated outside the traditional advertising campaign." <u>Accenture Global Servs. GMBH v. Guidewire Software, Inc.</u>, 581 F. Supp. 2d 654, 667 (D. Del. 2008).  "To pass the pleading threshold, a plaintiff at the very least must identify some medium or means through which the defendant disseminated information to a particular class of consumers." <u>Pactiv Corp. v. Perk-Up, Inc.</u>, No. 08-05072, 2009 WL 2568105, at *9 (D.N.J. Aug. 18, 2009) (citations omitted).

Viewing the facts in the light most favorable to Leonetti's, as I must, I find that the allegations in the amended complaint set forth a plausible claim that the photographs, ingredients and nutritional information on the packages that American Kitchen used to ship its stromboli were "designed to influence customers to buy" American Kitchen's products and that this information was "sufficiently disseminated to the relevant purchasing public to constitute advertising or promotion within the industry." <u>Caldon, Inc.</u>, 515 F. Supp. 2d at 578.  Leonetti's amended complaint alleges that the stromboli packaging and the alleged misrepresentations thereon "were made in connection with commercial advertising or promotion."  The photographs, ingredients and nutritional information on the packages that American Kitchen used to ship its stromboli were disseminated to Maglio and to each of Maglio's food service and retail customers for over four years.  <u>See</u> Am. Compl. ¶¶ 13, 15, 20, 29, 34, 54, 55, 59, 78.

The photograph on the package and the label identifying ingredients and nutritional

information for the stromboli are one of the primary means of promoting the stromboli when customers cannot taste the stromboli prior to purchase.  C.f. PPX Enters., Inc., 818 F.2d at 272 ("A record album's cover, bearing the name and likeness of a performer, is one of the primary means of advertisement for a record album, particularly when, in the normal retail situation, a customer has no way of hearing the record prior to purchase.") (quotation omitted).  The photographed example of a Maglio box included in American Kitchen's motion to dismiss, Dkt. No. 10-1 at 7, illustrates this point.  If the packaging in question were merely functional and not intended to also promote the product within, there would be no need to include anything other than identifying information on the box (i.e., a label unadorned by photographs, noting only that the box contains "stromboli" and including required nutritional information would suffice). Instead, on the package in question, embellished text next to a glossy photograph of a cheese and pepperoni filled stromboli induces potential customers to "Taste the Tradition."  Id.

Accordingly, I conclude that Leonetti's has set forth a plausible claim that the photographs and nutritional information on the packages that American Kitchen used to ship its stromboli constitute "commercial advertising and promotion" for purposes of Leonetti's Lanham Act claim and I will deny American Kitchen's motion to dismiss the amended complaint on this basis.

   c.  **Prudential Standing**

In its reply memorandum, American Kitchen argues that Leonetti's lacks prudential standing to bring its Lanham Act claims because the amended complaint "does not state any material facts to identify how and in what market [Leonetti's] is either a competitor with American Kitchen or a non-competitor that is somehow damaged by the alleged false

representations."  Dkt. No. 13-1 at 8.  I disagree.

Leonetti's and American Kitchen are market competitors in that they each are alleged to manufacture stromboli products for sale to food service and retail customers, whether under their own label or under a private label.  Further, even "parties not in direct competition may have standing to sue if they meet the 'reasonable interest' standard."  EVCO Tech. & Dev. Co., 2006 WL 2773421, at *2, citing Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc., 165 F.3d 221, 233 (3d Cir. 1998).  To determine the existence of a reasonable interest, I must consider (1) the nature of the alleged injury, including whether the plaintiff can prove competitive harm or harm to goodwill or reputation; (2) the directness of the asserted injury; (3) the proximity of the party to the alleged injurious conduct; (4) the speculativeness of the damage claim; and (5) the risk of duplicative damages or complexity in apportioning damages.  Conte Bros., 165 F.3d at 233, 234; see also Night Vision Sys., LLC v. Night Vision Depot, Inc., No. 07-4808, 2011 WL 3875515, at *3-8 (E.D. Pa. Sept. 2, 2011) (applying the Conte factors and finding that counterclaim plaintiff had standing to bring Lanham Act claim).

Applying these factors to the allegations in the amended complaint, I find that the allegations in Leonetti's amended complaint, if proven, support a finding that Leonetti's has a reasonable interest in protection from American Kitchen's alleged conduct.  Leonetti's alleged injury – that it has lost sales or goodwill due to American Kitchen's false advertising – is of the exact nature that the Lanham Act seeks to redress.  The alleged injury is sufficiently direct and Leonetti's is not removed from the alleged injurious conduct; American Kitchen's alleged conduct is alleged to directly affect Leonetti's ability to sell its own stromboli.  Even if Leonetti's damages are speculative, they are sufficiently pled to withstand American Kitchen's motion to

-18-

dismiss.  Further, the market for stromboli is not alleged to be complex and recognizing

Leonetti's right to bring a damages action against American Kitchen for American Kitchen's

alleged conduct is not likely to"subject the defendant firm to multiple liability for the same

conduct and result in complex damages proceedings."  Night Vision Sys., 2011 WL 3875515, at

*8.

        **d.**        **Primary Jurisdiction**

        American Kitchen argues that the doctrine of primary jurisdiction bars Leonetti's claims.

Primary jurisdiction "applies where a claim . . . requires resolution of issues which . . . have been

placed within the special competence of an administrative body."  MCI Telecomm. Corp. v.

Teleconcepts, Inc., 71 F.3d 1086, 1103 (3d Cir. 1995).  American Kitchen appears to contend

that Leonetti's false advertising claims fall under the jurisdiction of the Federal Trade

Commission and that Leonetti's complaint must include an allegation that the FTC has made a

determination that the USDA label included on the stromboli boxes included a "misleading

description of fact or content."  Dkt. 10-1 at 43.  I disagree.

        Leonetti's claims do not require the Court to second-guess an agency determination,

regardless of whether the label information on the stromboli packages falls under the jurisdiction

of the FTC or of the USDA, which, per Leonetti's allegations, had authority to approve the labels

on American Kitchen's stromboli packaging, Am. Compl. ¶¶ 23-25.  Although conclusions made

by the FTC or the USDA with respect to information included on the stromboli labels might

ultimately affect American Kitchen's defense against Leonetti's claims, the issue before me is

not whether the labeling on American Kitchen's stromboli complied with FTC or USDA

regulations.  Instead, Leonetti's claims raise the issue of whether the packaging used by

-19-

American Kitchen to ship its stromboli is false or misleading within the meaning of the Lanham

Act.  This is an issue within this Court's competence and is not an issue that will be decided by

the FTC or the USDA.  See Mut. Pharm. Co., Inc. v. Watson Pharm. Inc., No. 09-5421, 2010 WL

446132, at *5 (D.N.J. Feb. 8, 2010) (finding that the plaintiff's claim that the defendants made

false and misleading representations on their product labels of their products was "not a matter

reserved for the FDA").

   **2.**   **Unfair Competition Under Pennsylvania Law**

  Having concluded that Leonetti's has sufficiently alleged a claim for unfair competition

under section 43(a) of the Lanham Act, I likewise conclude that Leonetti's claim for unfair

competition under Pennsylvania common law can withstand American Kitchen's motion to

dismiss.  "Under Pennsylvania law, the elements necessary to prove unfair competition through

false advertising parallel those elements needed to show a Lanham Act violation, absent the

requirement for goods to travel in interstate commerce."  KDH Elec. Sys., Inc. v. Curtis Tech.

Ltd., --- F.Supp.2d ----, No. 08-2201, 2011 WL 5428644, at *17 (E.D. Pa. Nov. 4, 2011)

(citations omitted); see also Louis Vuitton Malletier & Oakley, Inc. v. Veit, 211 F. Supp.2d 567,

582 (E.D. Pa. 2002) ("The common law cause of action for unfair competition in Pennsylvania

mirrors the Lanham Act's section 43(a) cause of action for unfair competition, except that under

state law there is no requirement that the goods traveled through interstate commerce.").

  An appropriate Order follows.